THE following ORDER was subsequently made in this case:
And now 25th March, 1862, the Court upon considering
the report filed this day of the commissioners Brenner, War-
burton and Raisin, and the former report and evidence, said:
I think that the whole of the cargo should be sold as perish-
able, the portions as to which doubt might otherwise exist
being liable if separated from the residue to incur charges
by which their value would be absorbed and being, there-
fore, perishable by reason of such chargeableness. The mar-
shal will of course follow his usual practice in the case of
sales of property not condemned, of not disposing of it at
inordinate sacrifice. The several appraisements in this case
appear to have been very carefully made.

I order the sale of the whole cargo as perishable.

---

CIRCUIT COURT. NOVEMBER 12, 1861.
CRIMINAL LAW.

## THE UNITED STATES v. PERRY AND OTHERS.

On an application for a continuance in a prosecution for an offence com-
mitted at sea, it is not necessary that the affidavit should set forth the
evidence.

INDICTMENT of thirty-five persons, crew of the ship Petrel,
for piracy.

APPLICATION FOR CONTINUANCE.

### CADWALADER, J.

Yesterday, in the case of an indictment against several
persons for a treasonable attack upon the steamer St. Law-
rence, of the Navy of the United States, the counsel of the
United States, proposing to try some of the defendants
jointly, stated that the trial could not be commenced before
Friday next, assigning as the reason, the absence of a wit-
ness who is in the naval service. They said that his absence

had been the subject of correspondence with the Navy Department since the 11th of October; that two letters from that department, dated the 15th of that month and 5th of the present month, had been received; that the arrival of the witness was expected hourly; that if he were present, the trial could be proceeded with at once on the part of the United States; that his testimony could be supplied by that of another witness who was in attendance; and that the only reason for a delay till Friday was that, under the act of April 30, 1790, three days' notice of the name of the latter witness must be given before the trial.

The counsel for these defendants moved for a continuance until the next term, upon an affidavit of the absence of another witness—the naval officer who was in command of the St. Lawrence at the time of the occurrence in question. The affidavit stated in substance that he was a material witness for the defendants, without whose evidence they could not safely go to trial, and that they were not aware that the facts which they expected to prove by him could be established by any other testimony; that in consequence of his absence, ever since the indictment was found, from his "having been sent out by order of the Government," it had been impossible to serve a subpœna on him, and that they expected to be able to obtain his attendance at the next session of the Court.

The absent witness for the prosecution is not in attendance to-day. But this does not affect the question upon the motion for a continuance on behalf of the defendants, as I would, if I refused the continuance, postpone the trial until Friday next, as requested by the counsel of the United States. I proceed, therefore, to give my opinion upon this application for a continuance:

Under the twenty-ninth section of the act of 30th April, 1790, and sixth section of the act of 2d March, 1793, a subpœna, whether issued on behalf of the defendants or of the United States, would have "run" in this case into any part of the United States. The limitation of one hundred miles

from the place of trial applies only to witnesses in civil suits, and in criminal cases in which the defendant, *in forma pauperis*, obtains a subpœna under the eleventh section of the act of 8th August, 1846. Perhaps, therefore, this affidavit might have been insufficient, if the witness had not been on duty as a naval officer, under orders of the Government, at a period when the service of a subpœna would have been ineffectual, if not improper.

The government of a nation actively engaged in a civil war must often be unable to prosecute criminal charges against prisoners captured by its naval or military forces. Reasons of state which may induce a politic or humane forbearance till the termination of active hostilities, are not proper subjects of judicial consideration. But a practical truth which must be considered here, is, that the witnesses who know the facts in question are likely to be engaged in prosecuting hostilities where the mandate of a subpœna cannot be obeyed. The Government, it is true, may detach such witnesses from their military or naval duties for the purpose of their attendance upon the criminal courts. Where the Government can do this alike for the defence and for the prosecution, and can permit the attendance of the witnesses to continue as long as may be properly required, the ordinary course of criminal justice can be pursued in such cases. But how difficult this may be in a season of active war appears in the present case. The subpœnas on behalf of the United States were issued in September last. The officers of the law and navy departments have been for a month in correspondence as to the attendance of a witness for the prosecution; but there is no offer on the part of the Government to obtain the attendance of this witness for the defendant. No such offer could be expected, except under peculiar circumstances. But without it, the opportunities for commanding the attendance of witnesses are on one side only. I, therefore, think that the non-attendance of this officer has been sufficiently explained; and that if he is to be regarded as a material witness, the defendants ought not to be de-

prived of an opportunity to serve a subpœna upon him here-after, when his obedience to it may consist with his public duty, or may be sanctioned by the Government.

The only doubt which I have had is whether the materiality of his testimony appears sufficiently in this affidavit. The rule of practice on the subject, in this court, is not that which now prevails in England, or in our sister States, or even in Pennsylvania if it has here undergone the recent changes which have been mentioned in the argument of the present question.   Under the 34th section of the Judiciary Act of 1789, the laws of the several States, except where the Constitution, treaties or statutes of the United States otherwise require, must, in civil suits at common law, be the rules of decision in the courts of the United States, in cases to which they apply.   But, according to the case in 12 Howard, 361, which was decided in conformity to the opinion of Marshall, C. J., in 2 Burr's Trial, 481, the rules of proceeding in criminal cases in the courts of the United States are those which were established in the respective States when the Judiciary Act of 1789 was passed.   Our guide, therefore, in deciding the present question should be the practice which prevailed in Pennsylvania at that period.   The rule on this point was not then more strictly defined than the English practice, as it was fully stated and explained in the year 1764 in the Chevalier D'Eon's Case (3 Burrow, 1513, better reported in 1 W. Bl. 510).   In that case the defendant swore only to a hope and expectation  that the attendance of the absent witnesses could be obtained at the next term. Though he swore that they were material, it appeared that they had not been at the place where the act in question was charged to have been committed.   His affidavit was, therefore, adjudged insufficient.   Yates, J., said "Two rules are necessary to be observed.   1. The evidence must be material. 2. That it may be attainable.   1.   The Court will *not drive the defendant to disclose what the evidence is.*   But though he swears the man is a material witness, that oath is not conclusive.   If the other side can show it impossible, . . . that will

counterbalance his oath." Lord Mansfield said: "If the *usual form* of affidavit is observed, and there is no special ground of suspicion, the rule goes, *of course*. But, if there be such ground, it is refused, *unless the party will go into further and minuter circumstances.*" Formerly, the practice in the criminal courts of Pennsylvania was to require, at the first term, no particular or general statement in the affidavit of the circumstances to be proved. The most that was required was a statement that the witness was present at the occurence in question, or at some occurrence connected with it, or had some other means of knowledge on the subject. I doubt if even this was usually insisted upon at the first term, though, perhaps, it may sometimes have been required, when thought necessary in order to prevent imposition upon the Court. In the present case, the witness was not only present, but was the principal person on board. It would very seldom be safe, as to occurrences in a vessel at sea, to attempt before a trial, any such discrimination as would stamp the testimony of a witness who was on board as immaterial. The legislation of the United States indicates a purpose to extend, rather than restrict, the facilities of defendants in criminal cases in obtaining evidence. The act of Congress of 23d August, 1842, § 2, gives a discretionary authority to the judge or commissioner, at a preliminary hearing, to require a recognizance, with or without sureties, for the attendance, at the trial, of witnesses for the defendant, as well as of those for the United States, in all cases where a crime or offence is charged to have been committed *at sea*. It is true that the seventh section of the act of 8th of August, 1846, which gives in other cases, a somewhat similar discretionary authority to a judge as to witnesses on behalf of the United States, in *all* criminal cases, does not give such an authority as to witnesses for a defendant. But the difference in this respect, where the offence is charged as having been committed *at sea* shows a legislative discrimination, of which the reasons cannot be doubtful. In the case of occurrences at sea, not only are the means of obtaining and securing the attendance of witnesses

precarious, but none of those on board of the vessel in which they happened are, under ordinary circumstances, likely to be ignorant of everything that may be material. To decide now that the witness cannot be a material one for the defendants would prejudge a case in which the punishment is death, and assume their guilt without trial.

I, therefore, will grant the application for a continuance, unless the counsel of the United States can inform the Court that they expect to be able to secure the attendance of this witness within a reasonable period, for the prolongation of the session of the Court.